> Decree affirmed, and appeal dismissed at costs of appellants.

---

## APPEAL OF THE CITY OF WILKES-BARRE.

APPEAL FROM THE COURT OF COMMON PLEAS OF LUZERNE COUNTY, IN EQUITY.

Argued April 14, 1887—Decided May 2, 1887.

1. Under section 3, Article XV., of the Constitution, the Municipal Indebtedness Act of April 20, 1874, P. L. 65, and the Sinking Fund provisions of section 11, act of May 23, 1874, P. L. 234 (amended by section 2, act of March 23, 1877, P. L. 35), cities are required to levy and collect annually when necessary taxes at a rate within the limits prescribed for the extinguishment of their bonds and funded debt, and this in addition

to the taxes which they may levy and collect for city purposes under their charters granted prior to the constitution.

2. The taxes so authorized to be levied and collected under said acts may be applied to indebtedness created subsequent, as well as to that created prior, to the adoption of the constitution.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.   PAXSON, J., absent.

No. 419 January Term 1887, Sup. Ct.; Court below, No. 2. February Term 1887, C. P. in equity.

In this proceeding which was by bill in equity, William R. Gibbons, the plaintiff below, complained that he was a taxpayer of the city of Wilkes-Barre, and the defendant, the said city, was incorporated a city by act of May 4, 1871, P. L. 539, and its supplement of April 2, 1872, P. L. 740, and was authorized by the second section of said supplement " to levy and collect annually for city purposes any tax not exceeding two per centum on the dollar of the valuation assessed," and proceeded :

3. That the said council is about to levy and collect a tax of two per centum on the dollar of the assessed valuation for the ordinary purposes of conducting the city affairs, viz.: for streets, fire department, sewers, police, lights, salaries, etc., and in addition thereto the said council is about to levy a sinking fund tax of three mills on the dollar of the assessed valuation, to be applied to the extinguishment of eight per cent. of the interest and principal of the bonds and funded debt of the said city incurred or refunded since the adoption of the constitution in 1874, and to the extinguishment of three mills on the dollar of the bonds and funded debt of the city incurred prior to the adoption of the said constitution and not yet paid or refunded.

4. That your orator is advised and believes that the said council is not authorized to levy, for any purpose whatever, any tax in excess of two per centum on the assessed valuation, and therefore that the three mill tax aforesaid is void, and that the council must provide for the said sinking fund out of the two per cent. tax.

Your orator therefore prays :

(a.) That the said defendant, its officers and agents, be en-

joined from levying any tax in excess of two per centum of the assessed valuation of property in said city.

(*b.*) That the council of said city be required by mandatory order of this court to provide for the said sinking fund out of the two per cent. tax levied as aforesaid, and to make appropriations accordingly.

(*c.*) That such other and further relief be granted, etc.

To this bill the city demurred and for cause showed, that the act charged was authorized and directed by section 2 of the act of April 20, 1874, P. L. 65, passed in pursuance of section 10, article 9 of the constitution, and by the act of March 23, 1877, P. L. 35, passed in pursuance of section 3, article 15 of said constitution.

On argument, the court delivered an opinion :

The act of April 20, 1874, P. L. 65, known as the Municipal Indebtedness act, entitled an act to regulate the manner of increasing the indebtedness of municipalities, etc., provides that " an annual tax, commencing the first year after such debt shall be incurred or increased, equal to at least eight per centum of the amount thereof, shall be forthwith assessed to provide for the payment of the interest and liquidation of the principal thereof." The city having increased its debt, cannot escape the obligation to levy a tax for its gradual extinction ; but is this tax to be levied in addition to the taxes authorized by the charter, or does the obligation still remain to keep all taxes within the limit therein fixed? We remark, in the first place, that this act does not expressly repeal the provision of the charter, and in the second place, that it does not declare that the tax shall be levied in addition to other corporation taxes. In the absence of such expression of intention does a repeal by necessary implication arise? . . . . . Implied repeals are not favored and are never allowed except in cases of strong repugnancy or irreconcilable inconsistency. Especially is this true where the prior act is local and special and the latter act is general ; see Brown v. Williamsport, 84 Penn. St. 438 ; Sifred v. Com., 104 Idem 179 ; Same v. Same, 12 W. N. 380 ; Harrisburg v. Sheck, 14 W. N. 280 ; O'Malley v. Luzerne County, 15 W. N. 88. We do not think any such inconsistency or repugnancy is shown in the present case. If any inconvenience exists because of the limit fixed by the act of 1872

upon the rate of taxation, it results not from any inconsistency between that act and a general law limiting the amount of debt which a city may incur, and providing a mode for its liquidation, but from the changed condition of affairs in the city, and for relief from this inconvenience she must apply to the legislature. ·

We conclude, therefore, that in levying taxes for the gradual extinguishment of indebtedness incurred or refunded since the adoption of the constitution, the council cannot go beyond the two per cent. limit.

Is the city, in addition to the above taxes which it must levy for the gradual payment of the indebtedness incurred or refunded since 1874, required or authorized to levy a sinking fund tax under the act of May 23, 1874, as amended by the act of March 23, 1877, P. L. 35, and if so, must that tax also be. kept within the two per cent. limit? Section 3 of article 15 of the constitution provides that "every city shall create a sinking fund, which shall be inviolably pledged for the payment of its funded debt." This provision of the constitution is mandatory, and applies as well to funded debts then in existence as to such debts thereafter to be created. The act of April 20, 1874, the Municipal Indebtedness Act, P. L. 65, carried it out only in part, for that provided for indebtedness thereafter to be incurred or refunded, but not to other funded debt then in existence. This led, as we think, to the insertion of the first clause of section 11 in the act relating to cities, May 23, 1874. The tax there referred to is authorized "in addition to the other taxes of said corporation," and is to continue only until payment of the bonds and funded debt be provided for. Possibly, if there were any such debt of the city not fully provided for, the council might levy this three mill sinking fund tax in addition to the taxes authorized to be levied under the charter. But it was admitted on the argument that all the funded debt existing at the date of the adoption of the constitution has been since that time paid or refunded. We must presume that the city is annually levying a sufficient tax under the act of April 20, 1874, P. L. 65, to provide for the payment of the interest and the liquidation of the principal at maturity. If so, the constitutional mandate has been carried out, and, to adopt the language of the 11th

section of the Wallace act, payment of all the bonds and funded debt of the city has been fully provided for, and hence there is no longer any necessity or authority for levying this particular tax, in addition to the tax which the city is bound to levy under the act of April 20, 1874, P. L. 65, the Municipal Indebtedness act. We may remark, however, that in our opinion the latter act contemplates a tax specially laid for the purpose of paying the interest and principal of the funded debt, and not an annual appropriation out of the general revenues. Hence, the tax mentioned in the bill as levied for that special purpose is not illegal, but the taxes for ordinary purposes must be correspondingly reduced.

The demurrer is overruled and the defendant is directed to answer.—

Afterwards, no answer having been filed, but the defendant standing upon the demurrer, a judgment was entered *pro confesso* and a final decree made enjoining and restraining the defendant from levying any tax in excess of two per centum on the dollar of the assessed valuation of property liable to taxation for county purposes in said city, either for the sinking fund or for interest on the funded debt, or both; whereupon the complainant took this appeal, assigning the said decree as error.

*Mr. Allan H. Dickson*, for the appellant:

1. We do not dispute the proposition that prior to 1874 the right of the city of Wilkes-Barre under its charter to levy tax was limited to two per cent. on the valuation. But section 3, article 15 of the constitution and the act of April 20, 1874, P. L. 65, imposed upon the city a new duty and a new burden and gave it a new power. Then the city became bound to levy a special tax equal to eight per cent. of the indebtedness, whether it were a new debt just incurred or an old debt renewed. The grant of power to assess and collect a tax for a particular purpose, is a repeal *pro tanto* of all prior statutory restrictions of the power of taxation: Com. *ex rel.* v. Pittsburgh, 34 Penn. St. 497; Amey v. Allegheny City, 24 Howard 265; Butz v. Muscatine, 8 Wall. 575.

Nor is this a question of the repeal of a local act by a general one; each act grants a power to tax and there is no indi-

cation that one is to be included in the other. The first was merely a grant of power to levy taxes for municipal purposes to the extent of two per cent.; the other a requirement to levy and collect a special tax for a special purpose, and is but supplementary to the other. Thus the tax directed by the Municipal Indebtedness act is a tax additional to the tax authorized by the charter.

2. The Sinking Fund act was passed subsequently to the Municipal Indebtedness act, and is applied only to cities where the greatest extravagance existed, and we must presume that it was intended as a protection to creditors and an additional obligation upon cities for the purpose of more fully effectuating the object aimed at in the former and more general act. Our conclusion is based (1) on the express language of the Sinking Fund act, that the tax shall be in addition to all other taxes; (2) on the requirement that the tax is to be levied and collected " annually," and not " forthwith," as in the other act; (3) on the proposition that payment of a debt is not *fully provided for* until the money is in hand to pay it; (4) on the proposition that said act, which applies only to cities, was not a mere reiteration of the requirements of the former act relating to the indebtedness of all municipalities, but made additional requirements and gave additional powers.

*Mr. William S. McLean*, for the appellee :

1. It is admitted that *all* the bonds of the city, covering and representing an indebtedness incurred before and since the adoption of the constitution, have been issued under the provisions of the act of April 20, 1874, P. L. 65. That act provides that an annual tax commencing the first year after such debt shall be incurred, equal to at least eight per centum of the amount thereof, shall be assessed to provide for the payment of the interest and the liquidation of the principal thereof. The payment of *all* the bonds and the funded debt of the city having been thus " fully provided for," there is no occasion to consider the Sinking Fund act.

2. There remains then but the construction of the Municipal Indebtedness act. It does not expressly repeal the tax limitations of the city's charter, and it does not declare that the tax shall be levied in addition to the other corporation taxes. It

confers no new power. The city could increase its debt prior to the passage of this act, certainly within the constitutional limitation. It could also issue bonds to pay such increase: Com. *ex rel.* v. Pittsburgh, 41 Penn. St. 284. It could also levy a tax, within the charter limit, to pay off the bonds. It could also issue new bonds for old ones: Ragan v. Watertown, 30 Wis. 259.

The city, before the passage of the " Municipal Indebtedness act," had power to create a sinking fund, by setting apart annually out of its revenue a certain amount to pay its bonds upon their maturity. Indeed, it was not practicable to pay the bonds and provide for the current expenses out of a twenty mill tax in any other way. The act then, instead of conferring power, not authorized by the charter, limited the power, already conferred, in many ways. It limited the amount of indebtedness the city could create, it compelled the issue of bonds every time the indebtedness was increased, it compelled the levying of an annual tax to produce a sinking fund out of which to pay the interest and principal of said bonds.

Therefore the case of the Com. v. Pittsburgh, 34 Penn. St. 496, cannot sustain the appellant's contention.

OPINION, MR. JUSTICE GORDON :

The plaintiff's bill, in this case, charges as follows : " That the defendant is a municipal corporation, chartered by act of Assembly, approved May 4, 1871, and the supplement of April 2, 1872, and the council of said city is authorized by the second section of said supplement, to levy and collect annually, for city purposes, any tax not exceeding two per centum on the dollar of the value assessed. That the said council is about to levy and collect a tax of two per centum on the dollar of the assessed valuation for the ordinary purposes of conducting the city affairs, viz. : for streets, fire department, sewers, police, lights, salaries, etc., and in addition thereto the said council is about to levy a sinking fund tax of three mills on the dollar of the assessed valuation, to be applied to the extinguishment of eight per cent. of the interest and principal of the bonds and funded debt of the said city incurred or refunded since the adoption of the constitution in 1874, and to the extinguishment of three mills on the dollar of the bonds and funded

debt of the city incurred prior to the adoption of the said constitution, and not yet paid or refunded. That your orator is advised and believes that the said council is not authorized to levy, for any purpose whatever, any tax in excess of two per centum on the assessed valuation, and therefore, that the three mill tax aforesaid is void, and that the councils must provide for the said sinking fund out of the two per cent. tax." The prayers are for an injunction, mandamus and other relief.

To the bill as above set forth the defendant demurred, alleging in support thereof, that the action of the city council was authorized by the second section of the act of April 20, 1874, and by the act of March 3, 1877; which latter named act, § 2, provides as follows: " That for the purpose of creating a sinking fund for the gradual extinguishment of the bonds and funded debt of the respective cities of this commonwealth, the council of each thereof shall annually (until payment of the bonds and funded debt be fully provided for) levy and collect, in addition to the other taxes of said corporation, a tax not less than one fourth of one mill, and not exceeding three mills, upon the assessed valuation of the taxable property of each of said cities, to be called the sinking fund tax, which shall be paid into the city treasury, and shall be applied towards the extinguishment of said bonds and funded debt in the order of date of the issue thereof, and to no other purpose whatever." It will be observed that the act recited is a re-enactment of the 11th section of the act of the 23d of May, 1874, P. L. 234, except that it fixes the minimum tax at one fourth of a mill instead of one mill, which was the previous limitation. Upon this demurrer the court gave judgment against the defendant, and thereupon ordered an injunction to restrain the city from assessing and collecting the proposed three mill tax.

The reasoning upon which the learned judge based this conclusion was, in substance, as follows: the 3d section of article 15 of the constitution, provides that every city in the commonwealth shall provide a sinking fund for the payment of its funded debt. This provision applies as well to funded debts then in existence as to such debts as may thereafter be created. The act of April 20, 1874, provided only in part for the enforcement of the constitutional mandate, in that it embraced only indebtedness thereafter to be incurred, or refunded, and not

for previously existing funded debts.  From this the learned judge was led to think that the first clause of section 11 of the act of May 23, 1874, was passed to meet what he supposed to be an omission in the preceding act, and that the three mill tax therein authorized to be levied, "in addition to the other taxes of said corporation," was to continue only until such precedent indebtedness was provided for.  But we cannot adopt this method of reasoning, because it seems to us to be faulty in at least two particulars.

(1) There is nothing in the act itself which indicates that the legislature intended to limit it to pre-existing debts.  The expressed purpose is to create a sinking fund "for the gradual extinguishment of the bonds and funded debt of the respective cities of this commonwealth," and the additional levy and collection were to be made annually, "until payment of the bonds and funded debt be fully provided for."  But what is there in this which limits this provision to the bonds and funded debts of municipalities outstanding at the adoption of the constitution?  On the other hand, this same section provides : "That the councils of any city of the first class, the debt of which exceeds seven per centum upon the assessed value of taxable property therein, shall be and they are hereby authorized to increase the said debt one per centum upon such valuation."  To meet the indebtedness thus incurred, the city is required to provide for an assessed tax sufficient to pay the interest, and also the principal, of "said loan" within thirty years.  When, therefore, by the same section which creates the sinking fund, subsequent indebtedness is provided for, we may well conclude that the legislature intended that this fund should include such indebtedness as well as that which preceded it.  Again, as the act under consideration has no necessary connection with the precedent act of April 20th, we cannot see why it must be construed with it ; certainly, the former might be repealed without affecting the latter in the least.  But suppose such necessity exists, why should we not adopt the conclusion that the 11th section of the more recent act was intended to supply what was omitted in the former ; that is, the means for the creation of a sinking fund?  This, we are inclined to think, would be a better interpretation than that proposed by the court below.

(2) It is admitted that, at least, part of the funded debt of the city of Wilkes-Barre, existing prior to the adoption of the constitution, remains unpaid. It is true it has been refunded, but refunding is not payment. We must presume, says the court below, "That the city is annually levying a sufficient tax, under the act of Assembly of the 20th of April, 1874, to provide for the payment of the interest, and the liquidation of the principal at maturity." But this presumption is rebutted by the fact that the city has made no such provision, except by the levy of the three mill tax which the court has enjoined. On the learned judge's own reasoning, therefore, we convict him of error, for here is a pre-existing debt, the liquidation of which is unprovided for, and for which liquidation the sinking fund act, as he contends, was specially provided.

As to the contention that the three mill tax is to be regarded as part of and to be deducted from the twenty mill tax authorized by the city charter, little need be said, for it is a contradiction of the language of the act. The three mill tax is to be "in *addition to the other taxes* of said corporation," and we cannot understand "*other taxes*" to mean anything else than those taxes which the city had previously the power to levy, and they amounted to twenty mills. When, therefore, the plaintiff undertakes to subtract the three mills from "*the other taxes*," he simply inverts the language of the act, and ought not in reason to expect us to adopt a conclusion so utterly opposed to the words of the statute.

> The decree of the court below is now reversed, and the bill is dismissed at the costs of the appellee.