Millvale Borough.    Appeal of Howard et al.

*Municipalities—Water companies.*

Where there is no restriction placed upon the right of a municipality to erect waterworks in the future, the right of the municipality is entirely independent of the right of the private corporations to erect similar works, and it is no bar to such municipal right that such erection will injure private franchises of the same character.

*Municipal debt—Taxation—Acts of March 12, 1873, April 12, 1874.*

The constitution of 1874 and the subsequent legislation confer additional power to increase municipal indebtedness and to levy additional taxation, without any necessity for repealing pre-existing limitations of the tax rate for ordinary municipal purposes.

*Municipalities—Ordinances—Ratification.*

A municipal corporation may ratify the unauthorized acts and contracts of its officers or agents which are within the corporate powers, by ordinance subsequently passed.

Argued March 9, 1894.    Appeal, No. 41, Oct. T., 1894, by James Howard et al., complainants, taxpayers, from decree of Q. S. Allegheny Co., Sept. T., 1893, No. 14, refusing prayers of complainants.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Prayer for supervision of corporate action.

The complaint of appellants, taxpayers, averred :

"That prior to 1889 the borough of Millvale was without any supply of water and protection from fire.    Frequently prior to that time the matter had been discussed among the residents and in the town council of the borough as to the ability of said borough to construct a waterworks system, and estimates of the cost thereof had been obtained and a system had been suggested by which the borough should pipe the town, and the water should be supplied by private manufacturers, but the town council considered that it would be burdensome upon the taxpayers of the borough, and that it would be unadvisable to attempt any such arrangements.

"Certain residents of the borough who were property owners and interested in the development and prosperity of the community, being satisfied that it was impossible for the residents

to procure from the borough the supply of water and protection from fire which they needed, and after the town council had determined not to act in this matter, organized the Bennett Water Company, and in September, 1889, entered into a contract with said borough, as appears by the ordinance thereof marked " Exhibit A," attached to and made part hereof, by which it was agreed said company should furnish water to said borough for the term of twenty years, and said borough should pay therefor at the rate of forty dollars per plug, and by which the charge to private consumers should not exceed the rate set forth in said ordinance.

" The said water company then proceeded with the construction of a water plant and completed the same in the fall of 1890, since which time said company has been supplying said borough and the residents thereof and certain of the adjacent territory with water, and said borough has been paying the annual rent for water in accordance with the contract contained in said ordinance.

" [During the year of 1892, certain of the residents of the borough, on account of private grievances against some of the stockholders of said water company, began the agitation of a scheme to compel the water company to turn its plant over to the borough by threatening if the company refused to do so to construct a new waterworks by the borough, and thereby drive the Bennett Water Company out of business, and practically wreck its plant.] [1]

" [Local political influence sufficient to procure the passage of] [2] an ordinance for an election to increase the debt of the borough was secured, and an election was held in said borough on June 6, 1893, in pursuance of said ordinance adopted on May 1, 1893, which ordinance begins with the following preamble : ' Whereas, petitions have been presented to council praying for street improvements,' and in the body of said ordinance specified that said increase of the debt was ' For the purpose of public improvement upon the streets of said borough, as well as for the erection or purchase of waterworks and electric light plant.' "

" [Few of the streets of said borough are paved, and for many years continual complaints have been made regarding the condition of the unpaved streets. The improvement of said

streets was therefore placed first in said ordinance, and prior to
the election held in pursuance thereof the persons who had
been active in the agitation of the matters, busied themselves
inducing voters to vote for the increase of the debt, using the
argument that the works of the Bennett Water Company could
be purchased for $40,000, and that the remaining $40,000 could
be used in the improvement of the street and electric light-
ing.] [3]

" [Under this impression as to the use council would make of
the funds to be raised by said increase in debt and issue of
bonds, a majority of the persons voting at said election voted
for said increase of debt.] [4]

" [That the most active person in advocating the increase of
debt aforesaid was the burgess of said borough, one Samuel
Eades, who while pretending to negotiate for the purchase of
the plant of the Bennett Water Company, was scheming for
reasons of his own to erect a new waterworks, and during all
the meetings of the town council of said borough after said
election on said increase of debt, said Eades, in violation of law,
not only sat on said council, but voted in and presided over
the meeting, and said town council is and has been in its
deliberations, under the power and control of said Eades, and
certain members thereof have been acting in obedience to his
orders.] [5]

" That after said election of June 6, 1893, the Bennett Water
Company and the Millvale Electric Light, Heat and Power
Company, both of which are operated together and managed
by the same officers, although the stockholders were not iden-
tical, were invited to submit proposals for the sale of their
plants to the borough, and, in accordance with said invitation,
the proposal [for the sale], attached hereto and made part
hereof, dated June 26, 1893, was submitted to council. No
action was taken on this proposition, but the council proceeded
and advertised for bids for a new waterworks, and opened bids
therefor on August 14, 1893, but postponed action thereon un-
til August 16, 1893.

" About this time, it becoming apparent that the $80,000
increase in debt was not to be expended for the purpose for
which it had been voted, the citizens began expressing their
disapprobation of the course the town council, under the orders

of the burgess, was pursuing, and at the meeting of council of August 16, 1893, the communications from citizens attached hereto and marked Exhibits C and D, and made part hereof, were presented to said council. At this same meeting the proposition marked Exhibit E, attached hereto and made part hereof, was also presented to said council, but the said burgess, being unlawfully acting as the presiding officer of said council, refused to allow any of said communications to be read to the council, or to allow any of the councilmen to be informed of the contents thereof, although certain of said council protested against such action, and insisted upon said communications being read.

"Exhibit E was a proposal of the Bennett Water Company and the Electric Light Company to pay all the indebtedness of both said companies over $67,000, the debts of said companies being then something over $71,000, and, subject to the said debt of $67,000, to present said plants to the borough, the offer being, so far as it related to the water plant, an offer to present the water plant to the borough, upon the borough assuming the debts of said company to the amount of $61,500.

" That although said town council had not passed any ordinance or resolution authorizing the construction of a waterworks by said borough, the council, immediately after the refusal of said burgess to allow it to hear said proposal, upon an informal motion, agreed to let the contract for the erection of a waterworks to Chanley Brothers & Company, of Beaver Falls, the council reserving the right to select the style of pump to be used in said works, and at a subsequent meeting presided over by said burgess, the said council selected the pump of Wilson, Snyder & Company, at a cost of $2,000 over other bidders. The bid of said Wilson, Snyder & Company was not the lowest and best bid for said pump, [but the selection of said pump was secured through the influence of said burgess Eades and one Jacob Schinneller, the engineer on the part of the borough in charge of the construction of said works, and who was friendly to the Wilson-Snyder Company, and used his influence in their interest, and to whom, at the same meeting, the council of said borough paid on account of his services in the matter, the sum of one thousand dollars.] [6]

" Complainants aver that none of said meetings of said coun-

cil at which the construction of said waterworks was considered or action taken thereon, were legally organized meetings, the said burgess of said borough having at all of them voted and presided over them, in violation of the act of May 23, 1893, and spoken upon the questions considered, and influenced and controlled the council in its action.

" Complainants aver that no resolution nor ordinance was ever passed, authorizing the construction of said works, nor was any ordinance ever passed relating thereto, nor was there ever any resolution or ordinance presented to the burgess of said borough for his approval or disapproval, in accordance with said act of May 23, 1893, and that the contract signed on the part of the borough by said Eades as burgess, with said Chanley Brothers & Company, is without authority and illegal.

" Complainants show that after the election upon the increase of said indebtedness, the said town council at an illegally organized meeting thereof, on August 3, 1893, by said burgess presiding thereover, and voting and speaking therein, passed an ordinance marked Exhibit F, attached hereto, and made part hereof, authorizing the issue of $80,000 of bonds, and have agreed with the Pittsburg Trust Company to issue the same to the Pittsburg Trust Company and make the same payable to the said trust company at one per cent below par, and on August 16, 1893, at a like illegally organized meeting, endeavored to amend said ordinances by changing said bonds at the request of said trust company from negotiable coupon bonds to bonds to be registered by said trust company, and to change the dates of maturity, the number, denomination and so forth, of said bonds.

" That neither the said ordinance nor the resolution agreeing to sell the said bonds at less than par have ever been presented to the burgess for his approval or disapproval, as required by the act of May 23, 1893.

" Complainants further show that, under the law, the utmost limit of the taxing power of said borough for borough purposes is ten mills on the dollar on the assessed valuation for county purposes. That the tax assessed for the present year is ten mills on the dollar, and that the tax assessed for the last two preceding years for said purposes was ten mills on the dollar, and, by the most conservative estimate, a like tax of ten mills on the dollar will be required for the fixed charges and ordinary expenses of said borough, for some years to come.

"That by said ordinance authorizing said issue of said $80,000 of bonds, a tax of $6,400 is levied and assessed annually during the existence of said debt, to wit, until 1913, to provide for the payment of the debt and interest secured by said bonds, which, upon the valuation of said borough, to wit: $1,744,870, will require a levy of three and two thirds mills on the dollar over and in excess of said ten mills, and in violation of the law limiting the tax power of said borough.

"Complainants show that the borough of Millvale is located along the Allegheny river and in the Girty's Run Valley, and because of the hilly topography its streets and highways are, and always have been, expensive to construct and maintain. That it has somewhat over seven miles of highways, of which only about one mile of the most level and least expensive to construct and maintain is paved, leaving yet to pave over six miles of its most expensive highways to improve and maintain.

"That the present bonded indebtedness of said borough is $23,500, and if said indebtedness is increased by $80,000 it will burden said borough with a debt within less than $19,000 of the constitutional limit of its indebtedness, and with the greater part of its streets unimproved and without public sewerage system, except one alley of about four hundred feet.

"Complainants show that Girty's Run aforesaid is the main artery for conducting the drainage from said borough and the surrounding territory, which has a population of in the neighborhood of eight to ten thousand people, to the Allegheny river, including six or seven slaughter houses and several dairies. That in the dry season the stench arising from said stream is noxious and unhealthful. That the location by said borough of the pumping station for said waterworks is a short distance down stream from where said Girty's Run empties into the Allegheny river, and the water taken from the river at said point is necessarily contaminated by the poisonous substances delivered by said Girty's Run into the river, and will be dangerous and injurious to the health of the public using the same, whereas the pumping station of the Bennett Water Company is located on the Allegheny river above the mouth of Girty's Run, and the water furnished by said company is free from contamination by said stream.

"Complainants believe and aver that the proposed action of

the said borough in issuing said bonds and in erecting said waterworks is unwise, and is an extravagant, improper and illegal expenditure of public money, and they therefore pray your honorable court to exercise the supervisory power conferred upon it by law, and to declare : (1) The proposed issue of said bonds in the sum of $80,000 to be illegal. (2) That the action of said burgess in presiding over and voting in the meetings of said town council is illegal. (3) That the meetings of said council with said burgess presiding thereover have been illegally organized. (4) That the contract entered into with Chanley Brothers & Company, by said burgess on the part of said borough, is illegal and void: (a) Because no ordinance or resolution has ever been passed deciding upon the erection of a waterworks. (b) Because no ordinance has ever been passed authorizing the erection of a waterworks or relating thereto. (c) Because no ordinance has ever been passed appropriating money to pay for said waterworks. (d) Because no resolution pertaining to any matter connected with said waterworks or contract therefor has ever been presented to the burgess for his approval or disapproval. (5) That the payment of the sum of one thousand dollars to Jacob Schinneller is without consideration and is illegal. (6) That the erection of said plant is unnecessary and improper, and an extravagant and improper expenditure of public money."

The court on motion struck out the portions of the complaint in brackets.

The answer of the borough of Millvale, filed Oct. 28, 1893, admitted contract of borough with the Bennett Water Co. Admitted supply of water by Bennett Water Co. and payment of annual rental by the borough. Admitted ordinance of May 1, 1893, providing for an election to increase debt. Admitted invitations to water and light companies to submit proposals for selling of plants, and averred that action was taken thereon by resolutions by councils. Denied that there was ever any effort to spend the $80,000 for any purpose other than for which it was voted, and set forth as reasons for refusal to purchase plant of the Bennett Water Co. that the price asked was exorbitant, and funds of borough insufficient to complete plant. Denied that no ordinance or resolution was passed authorizing the construction of waterworks, and stated that council's action in the matter was ratified by ordinance of Oct. 3, 1893.

" The bid of Chanley Brothers & Co., to whom the contract was awarded in August, 1893, was for the erection of the entire work, and was for $61,500, including the ' Hall ' pump, or $63,500, including either the ' Gordon ' pump or the ' Wilson-Snyder ' pump. The only other bid for the entire plant was considerably in excess of this sum, and the responsible bids by those bidding on parts of the work only aggregated the sum of more than $63,500, so that Chanley Brothers & Co. were the lowest bidders. Council awarded the contract accordingly, reserving the right to determine at a future meeting the pump to be used, which was determined on Aug. 21, 1893, after a full investigation of the merits of the respective pumps, in favor of the ' Wilson-Snyder ' pump, for which bid one price had been offered.

" Respondent further answering says that council had proceeded throughout in its negotiations with the Bennett Water Company and the Millvale Heat, Light and Power Company with the utmost good faith, that it was ready and willing, up to the date of awarding the contract, to purchase said works at a fair valuation, but that said companies failed to meet them in the same spirit, asserting that no one could be found to purchase the bonds of the borough, and that therefore no new works could be built; but that when it was communicated to them on August 15th that the bonds had been sold, their attorney forthwith verbally informed the purchasers of the bonds that legal action would be instituted to restrain the borough from issuing them. Upon being informed of this action, although it had been intended to execute the contract for the erection of the waterworks on August 21st, notice was given to the attorney of said companies that the proposed execution of said contract would be delayed for one week, that legal action, if any were intended, might be instituted before the borough would have entered into any contract relations in the matter, or any money be expended upon said works. No such action being instituted, council executed the said contract on Aug. 29, 1893, nor were any such proceedings begun until Sept. 23, 1893, when the bill in equity was filed in the court of common pleas No. 2, in which a preliminary injunction was prayed for, which upon hearing was refused, and upon September 30th the complaint in this case was filed. Prior to the meeting of council on Sep-

tember 6, 1893, at which the communications attached to complaint were received, the contract was signed and the contractor had placed his orders for the supply of material, and had sublet work to the extent of about $50,000.   And that prior to the filing of the aforesaid bill and complaint, the liabilities on account of said contract were about $40,000.   That since said date, liabilities have been increased by about three thousand dollars, being for labor done, and that the work of erection is now about one half completed."

The answer further averred that meetings of council were legally organized.   Denied allegations in unnumbered paragraph 14 of the complaint.   Admitted passage of ordinances for $80,000 bond issue, but denied that the bonds were to be sold at less than par value.   Averred that all ordinances which were passed were published, and recorded and signed by the burgess. Averred the taxing power of borough to be more than ten mills, and that the taxes would not be increased the following year. Admitted condition of debt of borough, but denied that no public sewerage system had ever been adopted, and denied that the creation of the debt of $80,000 will increase the taxation. Denied that the supply of the proposed waterworks will be contaminated by the water from Girty's Run.   Alleged bond issue and erection of waterworks as wise and proper, and presented argument based upon alleged calculations in support of the allegation.   Denied issue of bonds and construction of waterworks were illegal, unwise, extravagant or improper expenditure of public money, or that any injury or grievance had been caused thereby.

The ordinance, Exhibit " A " of the complaint, provided in part as follows:

" Sec. 2. For and in consideration of the mutual covenants contained in this ordinance, the Bennett Water Company shall from time to time, and at all times hereafter, for and during the period of 20 years from the completion of the said works and the acceptance of the same by the said borough, as hereinafter provided, supply and provide the borough of Millvale and the inhabitants thereof with an ample supply " of pure water.

The ordinance of Oct. 3, 1893, was as follows:

" Section 1. The erection of a waterworks to provide a sup-

ply of water for the inhabitants of said borough of Millvale is hereby directed; said works to be constructed in accordance with the plans and specifications prepared by Jacob Schinneller, C. E., and now on file in the office of the borough clerk; said plans and specifications being approved by the said burgess and town council at a meeting held August 3, 1893, and being indorsed, 'Samuel Eades, Burgess, August 3, 1893.'

"Sec. 2. Of the sum of $80,000 realized or to be realized from an issue of bonds, as authorized by the electors of said borough at an election held June 6, 1893, as required by law, and as directed by an ordinance passed August 3, 1893, as amended by an ordinance passed August 29, 1893, the sum of $65,000, or so much of said sum as may be necessary, is hereby appropriated for the construction of said waterworks.

"Sec. 3. All acts, contracts or other things whatsoever, heretofore done or made in pursuance of any resolution or vote of the said burgess and town council, having for its subject-matter the erection of waterworks, as hereinbefore provided, is hereby confirmed and ratified as fully as if done or made after the passage of this ordinance and in virtue thereof.

"Sec. 4. All ordinances or parts of ordinances inconsistent with the provisions of this ordinance be and the same are hereby repealed in so far as they conflict herewith."

The borough of Millvale was incorporated by act of Feb. 13, 1868, P. L. 150, and the act incorporating the borough of Birmingham and its various supplements were extended to the borough of Millvale. By act of March 18, 1869, P. L. 422, all acts applying to the borough of East Birmingham were extended to the borough of Millvale. By act of April 28, 1854, P. L. 513, the ordinances of the borough of Birmingham were required to be recorded.

The act of March 12, 1873, P. L. 263, was entitled " An act authorizing the assessment, levying and collection of additional taxes in the borough of Millvale, in the county of Allegheny," and was as follows :

" Section 1. Be it enacted, etc., That the burgess and councils of the borough of Millvale, in the county of Allegheny, be and they are hereby authorized and empowered to levy and assess, and apportion, appropriate and collect, annually, for borough purposes, a tax, not exceeding ten mills on the dollar of the

valuation assessed for county purposes, as now is or may be provided by law, on all property, offices, trades, professions, and purposes, made liable by the laws of this commonwealth for county rates and levies, and shall be taxable after the same manner, by the said burgess and town council for borough purposes.

" Sec. 2. All laws and parts of laws inconsistent herewith, be and the same are hereby repealed."

The court below dismissed the complaint in the following opinion, by SLAGLE, J.:

" The power conferred upon the courts of quarter sessions by the act of April 3, 1851, sec. 27, to control the action of borough authorities was doubtless intended to avoid the slow process of suits in equity. This and the importance of the interests involved in the matters complained of in this case demand a speedy decision by the court. The press of other cases requiring prompt attention prevents the preparation of a full opinion upon the questions raised. We can do no more than briefly state conclusions.

" It is conceded that the proposed indebtedness of $80,000 is within the constitutional limitation of seven per centum of the assessed valuation. That the proceedings for an election and the election itself were in accordance with law, and the election resulted in favor of the increase of indebtedness by 430 votes in favor and 86 votes against. Nor is it disputed that the purposes of the loan are within the corporate powers.

"It is contended, however, that the action should be restrained because the voters were induced to vote in favor of the increase of indebtedness by a desire to obtain improvement of streets, which was placed as the first object and held out as the main purpose.

" We do not think this the proper subject of inquiry by the courts, but we cannot conceive that any considerable number would be so deceived if they had exercised their judgment as to the relative cost of waterworks, electric light and street grading.

" It is further alleged that the issue of $80,000 of bonds is illegal because it would involve taxation beyond the amount authorized by law. This does not clearly appear. Because the ordinary expenses and existing debt have heretofore re-

quired the full levy of ten mills, it does not follow that it will require that amount in the future, especially if the waterworks produces a revenue, which may reasonably be expected. But aside from this, we are of opinion that the authority to increase the indebtedness involves the right to levy a tax sufficient to pay it, in addition to that already authorized for ordinary purposes: Hamilton v. Pittsburg, 34 Pa. 496; Armstrong v. Allegheny Co., 40 Pa. 348; Lehigh Coal Co.'s Appeal, 112 Pa. 369.

" If we have the power to interfere on the ground that in our judgment the measure is ill-advised it would require a strong case to justify interference in a matter submitted to a vote of the people and approved by so large a majority.

" But we are asked to restrain the erection of waterworks, because the action of councils is not in accordance with law. The grounds of the objection are that the councils were not properly organized, the burgess presiding, and that the erection of works, appropriating money therefor, and letting of contracts were not provided for by ordinance duly adopted, signed and recorded.

" Every act of a municipal corporation need not be by ordinance. Those of a legislative or permanent character must be ordained. Merely executive action may be performed by councils as a body, or by committees duly appointed for the purpose. Of course all executive action must have proper authorization in the general law or special enactment. But when the mode of acting is not specified it may be done in any proper mode. Nor is municipal action to be very strictly criticised. It is sufficient if the law has been substantially followed.

" On May 1, 1893, an ordinance was duly adopted providing for an election for increase of indebtedness which recites that ' it is deemed proper that the borough should become the owner of its own waterworks,' and on August 3d another ordinance was passed which recites, whereas $80,000 in addition to the revenues of the borough will be required to pay for the purchase or erection of waterworks, etc., providing the issue and sale of bonds authorized by the people.

" In the meantime there had been communications and negotiations with the officers of the Bennett Water Company and the Electric Light Company to purchase their plants. They

had also employed an engineer to prepare a plan and estimates of waterworks. On the same day they authorized advertisements for bids for erection of the works and purchase of the bonds. On August 16th, they awarded the contract for erection of waterworks to Chanley Brothers. All of this was done at regular or called meetings of council on motion or resolutions which were not signed, published or recorded as ordinances.

"Some of these matters are purely executive in their character, such as the negotiations for purchase with the water or light companies, the procuring of plans and specifications which were necessary to the exercise of a proper judgment. The decision as to the erection of waterworks and to make a contract for this erection possibly required more formal action. They were within the purpose of the action of council and citizens authorizing the loan, but the execution of the purpose and the mode of execution was still with councils. It would have been proper for them to formally provide for the erection of the works by ordinance duly adopted. This was not done until October 3, 1893, when an ordinance was passed providing for the erection of waterworks, appropriating $65,000 for that purpose and ratifying all that had previously been done in relation to the matter. The complainants contend that this was inefficient, that the action taken was invalid and could not be ratified.

" The general rule is that any act which was irregularly done may be ratified and the party who had the power to do it given authority, in the mode in which it might have been done in the first instance if that is still practicable.

" The authorities cited by complainants are cases in which the party attempting ratification had no power whatever or could only exercise it upon certain conditions precedent. The conditions not existing, there was no power, and the act of ratification was void for the same cause. It has never been doubted that ' A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the corporate power : ' Dillon, sec. 385. If an ordinance was necessary in doing of any of the acts as to letting of the contracts in this case, the council had power to adopt it before the contract was made ; that was all that was necessary to make

the acts good.   It was therefore a mere irregularity which may be cured now by doing that which might have been done before.

" There could be no question of this if it were not for the provision of the law which provides that ordinances shall not go into effect until ten days after they have been recorded.   It is claimed by counsel for respondents that this act is not applicable to Millvale borough.   We do not agree with him.   The act to which we are referred is not in conflict with the act of 1851 or the act of 1849.   But we do not regard this provision as a limitation of power ; it is not a prerequisite to the exercise of power, and therefore does not prevent ratification by ordinance duly passed of acts which would have been legal and proper if done in pursuance of an ordinance previously adopted.

" It is also claimed that the action of council should be restrained because the waterworks are so located as to be dangerous to the health of the community and therefore a worse than useless expenditure of public money.   The testimony does not support this contention.   The opinions of the witnesses differ essentially.   If it is the subject of judicial control the danger is not so clearly established as to justify our interference.

" Whether or not the borough officers have acted justly and fairly with the Bennett Water Company we need not inquire. Their legal rights have not been infringed, (Lehigh Water Co.'s Appeal, 102 Pa. 515,) and those are all we can protect."

*Errors assigned* were the action of the court (1–6) in striking from the complaint the portions in brackets ; (7) decree ; quoting decree and portions of complaint stricken out.

*Walter Lyon, H. I. Riley* and *McKee & Sanderson* with him, for appellant, cited, as to right to levy tax : Act of March 12, 1873, P. L. 263 ; Dillon, Mun. Corp., p. 762, § 763 ; Ib., p. 768, § 769 ; Wilkes-Barre's Ap., 116 Pa. 246 ; Brown v. Williamsport, 84 Pa. 438 ; Sifred v. Com., 104 Pa. 179 ; Harrisburg v. Sheck, 14 W. N. 280 ; O'Malley v. Luzerne Co., 15 W. N. 88 ; Scranton v. R. R., 2 C. P. R. 1, 28.

As to validity of ordinances : Millford v. Water Co., 23 W. N. 413 ; Millerstown v. Bell, 123 Pa. 154 ; Verona Boro.'s Ap.,

108 Pa. 84; Butler v. School Dist., 149 Pa. 351; School Dist. v. Fuess, 98 Pa. 600; Nason v. Directors, 126 Pa. 445; Dillon, Mun. Corp. § 447, p. 441; Ib. § 449, p. 443; Ib. § 463, p. 460; Head v. Ins. Co., 2 Cranch, 127; Addis v. Pittsburg, 85 Pa. 379; Waln v. City, 99 Pa. 337; Fuller v. City, 18 W. N. 18; Fell Street, 4 Kulp, 37; Borough's Appeal, 108 Pa. 83; Marshall v. Allegheny, 59 Pa. 455; Middleton Road, 1 Del. Co. R. 482; Hague v. Phila., 48 Pa. 528.

As to limitation of power to ratify : Smith v. Newburgh, 77 N. Y. 130; Brady v. Mayor, 20 N. Y. 312; Peterson v. Mayor, 17 N. Y. 449; Brown v. Mayor, 63 N. Y. 239; Francis v. Troy, 74 N. Y. 338; Bryan v. Page, 51 Texas, 532; Newman v. Emporia, 32 Kan. 456; Leavenworth v. Rankin, 2 Kan. 352; Zottman v. San Francisco, 20 Cal. 96; Danville v. Shelton, 76 Va. 325; Mayor of Baltimore v. Porter, 18 Md. 284.

*R. H. Jackson*, for appellee, cited : Hamilton v. Pittsburg, 34 Pa. 496; Armstrong v. Allegheny Co., 40 Pa. 348; 3 Const. Debates, 273–295; Lehigh Coal Co.'s Ap., 112 Pa. 369; Wheeler v. Phila., 77 Pa. 354; Verona Boro.'s Ap., 108 Pa. 84; Dillon, Mun. Corp. §§ 450 (385), 463; Heekscher v. Shaefer, 1 Leg. Rec. 285; Parrish v. Wilkes-Barre, 2 Kulp, 182; Wheeler v. Rice, 83 Pa. 232.

OPINION BY MR. JUSTICE GREEN, July 11, 1894 :

A careful examination of the complaint in this case and of the answer and the affidavits submitted on both sides, satisfies us that the learned court below was right in the conclusions reached in the opinion filed. We can scarcely doubt that the proceedings by the burgess and councils, having in view the erection of new works, were animated and conducted with an unseemly desire to injure the Bennett Water Company, to destroy the value of its franchises, to disregard the terms of the solemn contract made by the borough with that company and with an entire willingness to evade the teachings of ordinary morality, business integrity and common honesty. Throughout the entire record there cannot be found the least evidence of any fault on the part of the water company either in the structure of their works or in the efficiency of their service. When, at the meeting of councils on August 16, 1893, an en-

velope respectfully addressed to the burgess and town council of the borough of Millvale was received by that body and a motion was made to open and read it, which the chairman, Eades, pronounced to be out of order upon a mere subterfuge, a deliberate insult was added to the other acts of oppression and injustice of which the burgess and councils had been guilty. The envelope was not opened until September 6th following, a period of twenty-one days, and when it was read it was found to contain a proposition from the water company to sell their works for $61,500. At the same meeting of August 16th, the councils with undue haste voted to award the contract for the new works to Chanley Bros. & Co., who were declared to be the lowest and best bidders, and when the contract was reduced to writing and executed the price to be paid was $63,500 exclusive of the cost of necessary land to be obtained. It is not difficult to draw the inference that the proposition of the Bennett Water Company was refused a hearing because it was feared that it might contain a lower bid than that at which the contract was awarded.

In such circumstances as these and others of a kindred character, it is much to be regretted that we can discover no way of arresting such proceedings. The difficulty arises from the character of the defendant corporation. It is a municipal body, clothed with the power of legislation to a limited extent, and, when within the limits of its authority, its acts are obligatory, not only upon the municipal body in its organized capacity, but upon the citizens who dwell within its territorial confines.

In the very important contract which was made between it and the water company there was no restriction placed upon its right to erect waterworks in the future. That is a right given to all such bodies by law and they may exercise it, no matter at what cost to private companies whose franchises are held subject to such right. This subject was fully considered by this court in the case of Lehigh Water Company's Appeal, 102 Pa. 515, where we held that the right of a borough to erect waterworks was entirely independent of the right of private corporations to erect similar works, and that it was a matter of no consequence that such erection injured private franchises of the same character.

It is claimed for the appellants in this case that in incurring

a debt of $80,000 in addition to a pre-existing debt of $23,000 and upwards, with a tax levy of ten mills for ordinary purposes and an additional tax of three and three eighths mills which would be necessary to pay the interest and principal of the new debt, the legal limit of possible indebtedness would be exceeded. The seven per cent limit would not be exceeded; this is admitted. The special, local act of March 12, 1873, P. L. 263, was simply a grant of power to levy a tax of ten mills for general borough purposes. There is nothing in that act to prevent the levying of an increased tax to pay the interest or principal of a debt which may lawfully be created in the future. The power to erect waterworks necessarily includes the power to raise the money to pay for them, and as increased indebtedness within the limit of seven per cent may be created under the constitution of 1874, we do not understand how such increase can be regarded as invalidated by either the constitutional limit of seven per cent, or by the act of April 20, 1874, P. L. 65. The very object of the act of April 20th was to enable *any* county, city, borough or other municipality to increase the amount of its existing indebtedness. The second section of the act enables the municipal authorities to increase the debt to the extent of two per cent of the assessed value of the taxable property therein, and the third section confers the power to increase beyond two per cent but not exceeding a total indebtedness of seven per cent, by means of an election conducted with certain prescribed formalities. The latter method was pursued in this case and there are no objections made to the validity of the increase on the ground that any of the prescribed formalities were not observed. It is contended for the appellant that an absolute limit of the taxing power of the borough was fixed by the act of March 12, 1873, supra, at ten mills upon the assessed valuation of the property of the borough, and as this act was not repealed by the act of April 20, 1874, that limitation still remains and therefore avoids the present proposed increase. We cannot possibly assent to such contention. We regard this very proposition as denied by the decision of this court in the Appeal of the City of Wilkes-Barre, 116 Pa. 246, where the same contention was made. We there went further than is required in this case and held that the taxes authorized to be

levied and collected might be applied to the payment of in-
debtedness contracted, as well previously, as subsequently, to
the constitution of 1874.   That is not the case here where the
only allegation is that an annual assessment of three and two
thirds mills tax will be necessary to pay eight per cent of the
increased debt of $80,000.   The answer denies that it will be
necessary to levy so large a tax as that for that purpose, but
even if it were, it would not be an excessive exertion of the·
taxing power of the borough.   In order that ·this power may
be exercised it is not at all necessary that the act of March 12,
1873, authorizing annual taxation at the rate of ten mills should
be repealed.   The constitution of 1874, and the subsequent
legislation, confer additional power to increase municipal in-
debtedness and to levy additional taxation, without any neces-
sity for repealing pre-existing limitations of the tax rate for
ordinary municipal purposes.

In regard to the allegation that the voters were induced to
vote in favor of the increase by means of misrepresentation, it
is obvious that the judiciary department of the government can
not go into such an inquiry.   The voters are responsible for
their votes and are necessarily supposed to inform themselves
as to the reasons and motives for the votes which they decide
to cast.   To institute an inquiry for such reasons and motives
in each individual case would be a work of impossible perform-
ance, and of no value if accomplished.   The actual vote cast is
the only test of the action of the body of voters.

We cannot see our way clear to declare the contract for the
erection of the works void for want of a previously enacted or-
dinance authorizing it to be made.   It is true there should have
been such an ordinance.   The act of April 28, 1854, P. L. 513,
requires that ordinances of the borough of Birmingham shall
be recorded, but no penalty is provided for its violation except
that such ordinances shall not go into effect until two weeks
after they have been recorded, and this was held mandatory in
the Appeal of the Borough of Verona, 108 Pa. 83.   The act
appears to be applicable to the borough of Millvale because the
act of March 18, 1869, P. L. 422, confers all the rights, privi-
leges, franchises, etc., of the borough of East Birmingham upon
the borough of Millvale.   But in Verona's Appeal it was held
that an act passed in 1873, validating the general plan of the

borough, cured the defect arising from the want of record.   And in Borough of Milford v. Milford Water Company, 23 W. N. 413, so much relied upon by appellant, it was held that, although the original ordinance was void because members of the water company were also members of the councils, another and similar ordinance might have been passed at any time subsequently, when the councils were purged of the presence of the members of the water company.

In the present case we are not referred to any provision of the law which makes the contract void for want of a previously enacted ordinance, where it was actually adopted and authorized by proper vote in the form of a resolution at a properly called meeting of the council.   Such a resolution was passed at the meeting of August 16, 1893, and at the meeting of August 29, 1893, the contract in writing was produced and read with the specifications, and both were adopted.   At the meeting of August 29th the contract was presented and the burgess and clerk were authorized to sign it and affix the corporate seal.

Afterwards, at the meeting of October 3, 1893, a formal ordinance was enacted directing the erection of waterworks according to the plans and specifications previously adopted, the sum of $65,000 arising from the loan of $80,000, which had been authorized by the previous popular vote, was appropriated for the construction of the works, and all previous contracts, acts or other things theretofore done in pursuance of any resolution or vote of the burgess and council in relation to the erection of waterworks were duly ratified and confirmed as fully as if done after the passage of the ordinance.   This ordinance was duly published, recorded in the ordinance book of the borough, and signed by the burgess.   We are unable to see why this ordinance does not accomplish the same effect as if it had been enacted before the contract was executed.   Viewed as an ordinance, as of its own date, it was certainly effective to authorize all subsequent action in execution of the contract, and the greater part of the work was then yet to be done.   The previous authorization of the contract by resolution was not void in itself.   It was not affected by any badge of fraud, nor by any want of capacity in the members of council.   The ordinance is subject really, only to the objection that it ought to

have been enacted at a somewhat earlier date.  But that circumstance does not avoid it, and it was still directly applicable to all subsequent work.  As to previous work it is certainly good by way of ratification.  Dillon on Municipal Corporations, sec. 385.  "A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers which are within the corporate powers, but not otherwise."

There is no question that the erection of waterworks was entirely within the corporate powers of the borough.  Upon the whole case we feel constrained to affirm the action of the learned court below.

Decree affirmed and appeal dismissed at the cost of the appellant.