## Bennett Water Company *v.* Millvale Borough, Appellant.

*Water companies—Boroughs—Erection of waterworks by borough.*

Where a borough has contracted with a water company to supply the borough with water, and the company has laid its pipes in the streets of the borough, the borough cannot subsequently erect and maintain waterworks of its own, and if it does so, it is liable to the water company in damages for the injuries sustained.

The decision in Howard's Appeal, 162 Pa. 393, overruled by White v. City of Meadville, 177 Pa. 643, did not take away from the Bennett Water Company the right to recover damages from Millvale borough for injuries resulting from the construction of waterworks by the borough.

*Water companies—Boroughs—Measure of damages for injuries sustained by the erection of a borough waterworks.*

In determining the amount of damages for injuries sustained by a water company through the erection of waterworks by a borough, the jury may take into consideration the amount of water rents collected by the borough, less the amount it would cost the water company to put such sum into its treasury.

Argued May 8, 1901. Appeal, No. 63, Oct. T., 1901, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1900, No. 689, on verdict for plaintiff in case of the Bennett Water Company v. Burgess and Town Council of Millvale Borough. Before McCollum, C. J., Mitchell, Fell, Brown and Potter, JJ. Affirmed.

Trespass to recover damages for injuries sustained by the erection of a waterworks. Before Frazer, P. J.

From the record it appeared that on September 7, 1889, the borough of Millvale contracted with the Bennett Water Company for a supply of water for public purposes. Thereafter the water company erected a waterworks and laid its pipes in the streets of the borough. In August, 1893, the borough erected a waterworks of its own. See Howard's Appeal, 162 Pa. 374, and Fingal v. Millvale Borough, 162 Pa. 393. The evidence showed that from the time the borough began to furnish water in 1894, until December 22, 1899, the date of the bringing of the suit, the borough collected $33,367.91 in water rents.

The court charged in part as follows:

[The plaintiff's claim is that the damage suffered by the

company is the amount of the receipts of the borough from the time it began business in 1894, until the time of the bringing of this suit on December 22, 1899. According to the testimony, the receipts of the borough from the water furnished customers by it during that time was $33,467.91.

" Now, I do not say to you as a matter of law that the water company is entitled to recover that amount of damages. It is for you, gentlemen, to say, as jurors in this case, whether or not that is the amount it is entitled to recover. As I said before, it is entitled to recover, if you find in its favor, such amount as will make it whole ; such amount as will place it in the condition it would have been financially on December 22, 1899, if the borough had not started its plant. The receipts of the borough were $33,467.91. That is not conclusive evidence that the Bennett Water Company suffered to that extent by reason of the construction of the borough works. It is some evidence to that effect, but it is not conclusive evidence. Some of the consumers of the borough might not have taken from the Bennett Water Company. You must consider all the evidence and consider whether or not all these people would have taken a supply of water from the Bennett Water Company. If they would all have taken water from the Bennett Water Company instead of from the borough, the Bennett Water Company's gross receipts would have been $33,467.91 more than they were during these years.] [17]

[If you should find that all the borough's patrons would have taken water from the Bennett Water Company had not the borough's works been in operation, the borough's receipts could properly be considered as an element in arriving at the damages in this case, less, however, what it would have cost the Bennett Water Company to put these receipts into its treasury, in excess of what its expenses were at the time. . . . While these receipts are not conclusive, as I said, and do not establish absolutely that that was the amount of the plaintiff's damage, they will afford you, gentlemen, a basis upon which to found your calculations.] [18]

[In addition to that, the borough put in forty-one fire hydrants. Under the contract with the company, whenever fire hydrants became necessary for the protection of the property of the inhabitants of the borough, the Bennett Water Com-

pany had a right to supply those additional hydrants. The borough had no right to take the right away from the Bennett Water Company. The municipality agreed in its ordinance authorizing the Bennett Water Company to come into the borough, to pay them for such fire hydrants as might afterwards become necessary. It appears that there were forty-one put in by the borough and supplied by the borough works sometime between 1895 and December 22, 1899; whether they were all put in at once, or put in at intervals does not appear by the testimony. If these forty-one hydrants were reasonably necessary for the protection of the property of the borough, or the property of the inhabitants of the borough at that time, then the Bennett Water Company would be entitled to recover rental for those hydrants from the time they were put in, and you will have to determine whether or not they were necessary and allow for such as were necessary at $30.00 per annum from the time they were put in until December 22, 1899. If the whole forty-one were reasonably necessary, then the Bennett Water Company would be entitled to recover for those forty-one. If thirty were reasonably necessary, it would be entitled to recover for thirty only, and in determining that question you will take into consideration the fact that they were ordered by the proper municipal authorities; and, also, consider the natural increase of population in the borough. The population of the borough in 1890 was 3,809, and in 1900 it was 6,736, showing an increase in ten years of 2,927 people, or an average annual increase of about 293 persons. You will take these matters into consideration, and also apply your own judgment in regard to those matters in considering the testimony in determining the extent of the damage suffered by the company.] [19]

Defendant presented these points:

4. That at the date of the ordinance with the Bennett Water Company, September 7, 1889, the Supreme Court of Pennsylvania had construed the law as applying to such contracts that the same did not in any way abridge or curtail the borough power to erect its own waterworks: Lehigh Water Co.'s Appeal, 102 Pa. 515. That the laws thus construed enter into and become a part of this contract by operation of law; in this particular case it was specially incorporated by the language of the ordinance itself. That this construc-

tion of the law as applying to this contract was subsequently affirmed by the Supreme Court (Howard's Appeal, 162 Pa. 374, Fingal et al. v. Millvale Borough, 162 Pa. 393), and that the terms of this contract cannot be varied or changed by the subsequent decision of the Supreme Court in White v. City of Meadville, 177 Pa. 643, so as to give to the water company any greater rights than it had under the law as formerly construed, or so that the rights of the borough of Millvale shall be any less than formerly, because of the prohibition of article 1, section 10, of the federal constitution, forbidding any state to pass any post facto law or law impairing the obligation of a contract. *Answer:* Refused. [24]

6. That at the time of the construction and completion of its waterworks by the borough, such action on the part of the borough was entirely lawful and constituted no injury to plaintiff company's legal rights for which the company could maintain an action in damages against the borough ; and that no subsequent decision by the Supreme Court, changing the construction of the law, could operate so as to give the company a right of action. *Answer:* Refused. [25]

Verdict and judgment for plaintiff for $34,467.91. Defendant appealed.

*Errors assigned* among others were (17, 18, 19, 24, 25), above instructions, quoting them.

*R. H. Jackson,* of *Jackson & Lang,* with him *H. I. Riley,* for appellant.

*Lewis McMullen,* with him *Walter Lyon* and *Shiras & Dickey,* for appellee.

PER CURIAM, October 14, 1901:

No valid reasons have been assigned why the judgment in this case should be disturbed. What was said by our late Brother GREEN as to the conduct of Millvale Borough, 162 Pa. 374, can well be repeated now : " We can scarcely doubt that the proceedings by the burgess and councils, having in view the erection of new works, were animated and conducted with an unseemly desire to injure the Bennett Water Company, to de-

stroy the value of its franchises, to disregard the terms of the solemn contract made by the borough with that company and with an entire willingness to evade the teachings of ordinary morality, business integrity and common honesty. Throughout the entire record there cannot be found the least evidence of any fault on the part of the water company either in the structure of their works or in the efficiency of their service."

The Bennett Water Company was not a party to the proceedings in Fingal et al. v. Millvale Borough, 162 Pa. 393, and our decree there was simply one affirming the decree below, refusing a preliminary injunction. With no final decree in that case, which is still pending, and to which the appellee is not even a party, the borough of Millvale cannot turn to it as conclusive of its right to commit the wrongs complained of by the water company, and it can hardly say with candor that it expended any money or did anything in consequence of what may have been said in Howard's Appeal, 162 Pa. 374, argued with the preceding case; for its works were erected in 1893, and these cases were not argued until March 9, 1894, and decided only on July 11 of the same year. There is therefore no reasons why what is now settled in White v. City of Meadville, 177 Pa. 643, should not apply to the case before us. No complaint was ever made that the water company had failed to supply pure and sufficient water to those entitled to it. If there had been any dereliction by the company in the discharge of this duty, there was a statutory mode to enforce it. No other course was open to the borough of Millvale, even for failure to properly supply it and its citizens with water, and with no complaint that the water company did not so supply them, the erection of waterworks by the borough, resulting in the ruin of the water company, was a trespass, both wilful and intentional, and the measure of damages as laid down by the court was entirely proper. The mitigation claimed by the appellant was not of right in view of its wilful wrong to the appellee. Upon the question of damages, as well as upon the others raised, the case was intelligently and correctly submitted to the jury by the learned trial judge in his charge and answers to appellant's points, and the judgment is affirmed.