# Bennett Water Company *v.* Millvale Borough, Appellant.

*Water companies—Boroughs—Damages—Erection of waterworks by borough.*

In determining the amount of damages for injuries sustained by a water company through the erection of waterworks by a borough, the jury may take into consideration the gross amount of water rents collected by the borough, less the amount it would cost the water company to put such sum into its treasury.

In an action by a water company against a borough to recover damages for injuries sustained through the erection of waterworks by the borough, evidence that the water company had neglected to extend its mains to all parts of the borough territory, is inadmissible, where there is no offer to show that the borough had requested the extension of the water pipes as provided in its contract with the water company.

In an action against a borough by a water company to recover damages for injuries sustained through the erection of waterworks by the latter, the borough cannot set up as a defense an alleged impurity of water.

Reargued March 4, 1902.    Appeal, No. 63, Oct. T., 1901, by defendant, from judgment of C. P. No. 2, Allegheny Co.,

Jan. T., 1900, No. 689, on verdict for plaintiff in case of the Bennett Water Company v. Burgess and Town Council of Millvale Borough. Before McCollum, C. J., Mitchell, Dean, Fell, Mestrezat and Potter, JJ. Affirmed.

Trespass to recover damages for injuries sustained by the erection of a waterworks. Before Frazer, P. J.

The facts appear by the report of the case in 200 Pa. 613.

*John G. Johnson,* with him *R. H. Jackson, H. I. Riley* and *F. G. Patterson,* for appellant.

*Lewis McMullen,* with him *Shiras & Dickey* and *Walter Lyon,* for appellee.

Opinion by Mr. Justice Dean, May 19, 1902:

The history of this litigation is not a short one. It will be found reported in Howard's Appeal, 162 Pa. 374, and in the appeal of the borough in which opinion was handed down at Pittsburg at October term, 1901, and is reported in 200 Pa. 613.

On a motion for reargument, after the last decision, we decided to hear a reargument on the assignment of error to the charge of the court on the measure of damages and to the rejection of testimony offered by appellant bearing on that question. Appellant's counsel who prepared this paper-book, seems to have thought, we desired to hear, as well, a criticism of the former rulings of this court on the whole case. This is a mistake; he has wasted much time and taken much trouble on a subject which has no bearing whatever on the question directed to be reargued.

At the former argument, but little stress was put on the question now for consideration, and that we might get further light on the subject, and if any mistake had been made, correct it, was our purpose in ordering the reargument.

It is complained, that the court in its charge admitted in evidence the gross amount of water rents received by the borough from its own plant from the date of its construction up to December 22, 1899, the date of plaintiff's suit, and then, practically directed the jury to take this amount as the measure of damages. Picking out certain phrases in the charge and

adopting them as the substance of the charge, on this subject, the argument of appellant might be sustained; but such interpretation wholly disregards the plain meaning of the entire charge, as well as many facts of which there was no direct testimony, but assumed by both parties and the court at the trial. After stating the gross amount of the receipts from the consumers who took water from the borough plant, the court says the plaintiff is entitled, "to recover such amount as will make it whole. . . . The receipts of the borough were $33,467.91. That is not conclusive evidence that the Bennett Water Company suffered to that extent by reason of the construction of the borough works. It is some evidence to that effect but is not conclusive evidence.

"Some of the consumers of the borough might not have taken from the Bennett Water Company. You must consider all the evidence and determine whether or not all these people would have taken a supply of water from the Bennett Water Company." Then, almost immediately on that subject, he further says to the jury: "If you should find, that all of the borough's patrons would have taken water from the Bennett Water Company, had not the borough's works been in operation, the borough's receipts could properly be considered as an element in arriving at the damages in this case, less however, what it would have cost the Bennett Water Company to put those receipts into its treasury in excess of what its expenses were during that time."

It must be borne in mind, that it was either expressly or tacitly assumed, by all parties at the trial, that by act of the borough in establishing a municipal plant, the value of the water company was practically destroyed; the consumers of the latter company at once began to transfer their patronage to the borough works. When the borough was ready to supply water, the company had 306 patrons; these gradually fell off until it had but forty-one, when this suit was instituted. It was obvious, that if the company continued under its original contract to supply the public hydrants with only forty-one individual consumers, or perhaps in another year none at all, it must keep its contract at a very heavy loss, and this, notwithstanding the fact, that the population of the borough was rapidly increasing; in 1890 it was only 3,809, in 1900 it was 6,736. The real measure

of damages was just what the learned judge, in view of the law and these undisputed facts, stated to the jury. . . . What would make the plaintiff whole under its contract? The gross receipts was an element in the computation of the amount, but only an element; from that the jury must deduct whatever it would have cost the company to put the money into its treasury. This measure of damages, as adopted by the court below, was as favorable to appellant as it had a right to ask. The jury were allowed no room to guess, but were strictly confined to an amount which would make plaintiff whole for the breach of its contract; in such construction there is no semblance of error.

Further, appellant is mistaken in arguing, that the verdict is in a greater sum than plaintiff claimed in the court below or offered any evidence tending to establish, and therefore, must have included vindictive damages. It claimed very nearly $50,000, and there was some evidence tending to prove actual damage to this amount; the court strictly limited the verdict to actual damage, and the jury rendered one for about $16,000, less than the actual damage claimed by the plaintiff.

Several of the assignments of error are to the rejection of testimony offered by defendant for the purpose of showing that the water company had neglected to extend its mains to all parts of the borough territory, therefore, some of the consumers of the borough were reached by it because of complainant's neglect. This might have been material in mitigation of damages, if the offer had been preceded by one to show, that the borough before it violated its contract had requested the company to extend its mains into new territory and it had neglected or refused to do so. The borough, on September 7, 1889, made its contract with plaintiff to supply water to the borough as it then existed; this plaintiff unquestionably did. Then comes this provision: " The said Bennett Water Company shall make extensions of its water pipes in all cases where requested by councils and where extension will pay an annual revenue of six per cent on the cost of making such extension." After the company laid its mains and put in hydrants on the original plans under the contract, extensions could only be made at the request of the borough under the stipulations of the contract; there was no offer to prove that it had neglected or disregarded any request, before the construction of the rival works, and after such con-

struction it might well hesitate or refuse to lay a parallel main where, evidently, it could not compete for a single consumer. It was neither bound in law nor reason to incur a useless expense. When the court stated to appellant, that the evidence would be admitted if appellant would even follow the offer with evidence of request by council for extension and a refusal by the company, appellant replied, the borough had no evidence to that effect except the ordinance to erect borough works which was the first step in the breach of the contract. Under the offer, as made, the testimony was clearly inadmissible; it was an attempt to justify a wrong, not to palliate one, by showing audacity in its commission.

As to the complaint of impurity of water, which arose only since the appellant broke its contract, we have more than once decided, that such an issue cannot be raised in this proceeding. Section 34, of the general act of 1874, points out the remedy of the borough on failure of the contracting company to observe its covenants, but it is not the one adopted by appellant here.

After full consideration, we do not sustain the assignments of error here raised and adhere to our decision in the former case.